**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
October 4, 2013

No. 12-30410

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

RICHARD CHANDLER,

Defendant - Appellant

Appeal from the United States District Court
for the Western District of Louisiana

Before HIGGINBOTHAM, OWEN, and GRAVES, Circuit Judges.

JAMES E. GRAVES, JR., Circuit Judge:

Richard Chandler pleaded guilty to engaging in a child exploitation enterprise. At sentencing, the district court varied upward by 127 months over the recommended Guidelines range to impose 420 months of imprisonment. We find that the district court erred by increasing Chandler's sentence based on the fact that he was a police officer. We remand for re-sentencing.

## I. Factual and Procedural Background

Chandler joined "Dreamboard," a members-only online bulletin board which conditioned membership on posting and sharing child pornography. Members of the board would advertise child pornography available for distribution by posting a description, "preview" images and information about

No. 12-30410

how to download the material. In order to obtain and retain membership on the board, an individual was required to post advertisements for child pornography on a regular basis. There were five distinct levels of membership, with each level having access to different sections of the bulletin board. The administrators of the bulletin board were the highest level members and had access to all of the advertised child pornography on the bulletin board. The second highest level was the "Super VIP." membership level, which included members who were producing child pornography and posting it on the bulletin board.[1] The other three membership levels were "Super VIP," "VIP," and "Members." The members at each of these levels could see the posts on their membership level and on any level lower on the bulletin board.

Chandler joined Dreamboard in February 2010. He was a police officer at the time. As a result of his postings, he was raised to VIP status, the second-lowest membership level. He posted at least 117 posts, the majority of which were children posing or engaging in sexual acts with adults. The pre-sentence report ("PSR") reflected that Chandler published the advertisements and offered to distribute the material on April 27, June 7, and June 10, 2010.

Chandler was indicted in March 2011. A second superseding indictment charged him with: (1) engaging in a child exploitation enterprise, 18 U.S.C. § 2252A(g); (2) conspiring to advertise the distribution of child pornography, *id.* § 2251(d)(1), (e), and; (3) conspiring to distribute child pornography, *id.* § 2252A(a)(2)(A), (b)(1). Chandler pleaded guilty to engaging in a child exploitation enterprise, and the remaining counts were dismissed.

The parties agree that the district court correctly calculated Chandler's Guidelines range as 240-293 months. In the PSR, the probation officer stated that he had not identified any factors warranting a departure or variance from

---

[1] The name of the level "Super VIP." included the period in the name.

2

No. 12-30410

the Guidelines range.  Chandler did not file objections to the PSR, but he filed a Motion for Deviation from Sentencing Guidelines, arguing that a significant downward departure from the Guidelines was justified in his case because the sentencing scheme for possession of child pornography is unfair and the circumstances of his offense warranted leniency.  The district court rejected Chandler's motion, noting that Chandler was not a "mere possessor" because he had repeatedly posted child pornography.  The district court ultimately imposed a sentence of 420 months of imprisonment, an upward variance of 127 months from the top of the Guidelines range.  The district court found that the non-Guidelines sentence was justified by the nature and circumstances of the offense, particularly Chandler's abuse of his public office as a law enforcement officer, his use of other people's internet connections to attempt to hide his participation in the scheme, and the fact that he posted child pornography 117 times, mostly with children 8 to 14 years of age.  Chandler did not object to the sentence.  Chandler filed a timely notice of appeal.

## II. Discussion

On appeal, Chandler raises multiple challenges to the substantive reasonableness of his sentence.  He contends that the district court erroneously denied his motion for a downward deviation, improperly considered his status as a police officer, improperly considered his use of other people's wireless networks, imposed a sentence disproportionate to his co-defendants' sentences, and imposed a sentence greater than necessary to achieve the aims of sentencing.  We focus on his contention that the district court improperly relied on his status as a police officer.

"Where, as here, the defendant fails to object to his sentence during sentencing, we review the District Court's sentencing decision for plain error." *United States v. Ronquillo*, 508 F.3d 744, 748 (5th Cir. 2007).  "We find plain error only when (1) there was an error; (2) the error was clear and obvious; and

No. 12-30410

(3) the error affected the defendant's substantial rights." *Id.* (quoting *United States v. Villegas*, 404 F.3d 355, 358 (5th Cir. 2005)).  If all three plain error conditions are met, we have "discretion to notice a forfeited error but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (quoting *Villegas*, 404 F.3d at 358-59).

In reviewing a challenge to the substantive reasonableness of a non-Guidelines sentence, "[a] non-Guideline sentence unreasonably fails to reflect the statutory sentencing factors where it (1) does not account for a factor that should have received significant weight, (2) gives significant weight to an irrelevant or improper factor, or (3) represents a clear error of judgment in balancing the sentencing factors." *United States v. Smith*, 440 F.3d 704, 708 (5th Cir. 2006).  When reviewing a non-Guidelines sentence, we "may consider the extent of the deviation [in our review], but must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *United States v. Broussard*, 669 F.3d 537, 551 (5th Cir. 2012) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)).

In varying upwards by more than ten years over the recommended Guidelines sentencing range, the district court relied extensively on the fact that Chandler was a police officer at the time of the offense.  At sentencing, the court made the following remarks:

- [A]t the time of the commission of these offenses, . . . the defendant was, in fact, a law enforcement officer. And that's one of the aspects that gives me great pause for concern on the appropriate sentence.

- This defendant is a police officer. Not only did he choose to violate that trust that he swore to uphold, he also, in going to Dreamboard—he stole Internet access from innocent people, and he stole it from them so he could go on the Dreamboard and not be caught.

4

No. 12-30410

- [P]eople who see this need to know—people who are in a position like his need to know that if they choose to violate the law in this way, if they choose to violate not just the trust of every person that they've sworn to uphold but also to put them at risk in going to a place where they're exploiting children—and what he was doing was exploiting children . . .[—] every other person who is put in a position of trust needs to know that if you do this, the consequences are grave.

- I am visibly angry over your abuse of the public's trust, and your behavior as a law enforcement officer in committing these crimes simply cannot be tolerated.

- You have abused your position of trust, you have abused your position of responsibility, and then you have violated the oath of your office as a law enforcement officer.

- As a law enforcement officer, you have placed yourself in a different category; and it's a heightened one, because you took an oath of office.

- Our own police officer in our own community doing this.

Some of these comments can be interpreted as comments on Chandler's socioeconomic status, which is clearly an impermissible sentencing factor.  It is well-established that "[a] defendant's socio-economic status is never relevant to sentencing." *United States v. Burch*, 873 F.2d 765, 769 (5th Cir.1989); *see United States v. Harrington*, 82 F.3d 83, 87-88 (5th Cir. 1996) (holding that defendant's status as a prosecutor was an element of socioeconomic status); *United States v. Stout*, 32 F.3d 901, 903-04 (5th Cir. 1994) (holding that the defendant's position as a judge was an unacceptable reason for departure). "Under the guidelines, sentencing is to be based upon the crime committed, not the offender.  While certain characteristics of the offender, such as prior criminal conduct, are relevant to sentencing under the guidelines, it is because such characteristics are directly relevant to the crime committed." *Burch*, 873

F.2d at 768-69 (citations omitted); *see Harrington*, 82 F.3d at 88. In *Stout*, the sentencing court said of a defendant former judge:

> You sat in judgment of your fellow citizens for twenty years. And it seems to me, as such, you should be held to a higher standard of accountability, and you should have had the legal expertise as well as the moral sense as a recipient of the taxpayers' funds, respect, and trust, to know better.

*Stout*, 32 F.3d at 903. We rejected the government's argument that these comments related to the "defendant's culpability based upon his knowledge of the law and his ability to pay the taxes due," and concluded that "[t]he comments clearly relate to Stout's socioeconomic status." *Stout*, 32 F.3d at 904 n.2. Some of the comments made by the district court here, such as those stating that by being a police officer Chandler has placed himself in a different category and should be held to a higher standard, are similar to those in *Stout* and could be interpreted to cross the line into impermissible reliance on Chandler's socioeconomic status as a police officer.

To the extent that the district court's comments regarding Chandler's position are findings that Chandler abused his position of trust or that the offense was more serious because of Chandler's position, the district court likewise erred. Though we are mindful that our review in this case is only for plain error, our circuit precedent is clear that a defendant's status as a police officer, standing alone, is not a justifiable reason to increase a sentence. *See United States v. Wade*, 931 F.2d 300, 307 (5th Cir. 1991); *see also United States v. Roach,* 201 F. App'x 969, 976 (5th Cir. 2006) (distinguishing cases where the sentencing court upwardly departed "merely because of [the defendant's] socio-economic status or position in public office" from the circumstances where the defendant, a prosecutor, used his position in the commission of the offense). If a defendant police officer abuses his position by using it to facilitate the offense, his position is an appropriate sentencing factor. *Wade*, 931 F.2d at 307;

*see also  United States v. Esquival,* 407 F. App'x 781, 784 (5th Cir. 2011) (affirming within-Guidelines sentence above the statutory minimum where border patrol agent, *inter alia*, abused position of trust by providing information to drug traffickers).  Further, when law enforcement experience is one factor among many relied on by a district court in judging the seriousness of an offense, it may be a relevant consideration. *See United States v. Pridgen*, 898 F.2d 1003, 1004-05 (5th Cir. 1990) (affirming upward departure where former law enforcement officer abducted a bank employee during a robbery for an extended period); *but see Wade*, 931 F.2d at 307 (noting that "*Pridgen* does not give approval for an upward departure each time a law enforcement officer is sentenced").  Here, however, though the district court *stated* multiple times that it was varying upwards because Chandler abused his position, the district court did not rely on any facts showing that Chandler acted in his capacity as a police officer in posting child pornography on the internet.  There is no evidence in the record that he used or exploited his position as a police officer, or used any knowledge or skills he gained from that position, to commit the offense or attempt to hide it.

The district court's error was compounded by its mischaracterization of the conduct involved in Chandler "stealing" other people's "identities" or "internet addresses."  The only description of this conduct in the record is in a sentencing memorandum filed by the government, which states that Chandler used other people's unsecured wireless connections.  Though the government refers to this as "stealing," it essentially amounts to logging onto an open wireless network. While we agree with the government that such activity could have caused innocent people to be subject to investigation, it clearly is not equivalent to identity theft or any sort of skilled hacking activity, though the

district court discussed it as if it required highly technical knowledge that Chandler acquired as a police officer.  The court stated:

> I am extremely concerned over a policeman who has the capability and the knowledge and the know-how and does steal Internet identities of other people in order to hide who the hell you are.  You are a sneaky thief with enough knowledge to know how to acquire those Internet addresses and Internet identities of innocent people who didn't know that their Internet addresses and identities were being purloined by you for the purposes that you were putting them to.

There is no evidence in the record supporting the court's characterizations of Chandler's conduct as stealing "Internet identities," or connecting Chandler's use of other people's unsecured wireless connections with his work or skills acquired as a police officer.

In sum, Chandler's position as a police officer does not justify the increased sentence here, where there is no evidence that he used his position to facilitate the offense.  Although the district court considered other factors at sentencing, the record shows that Chandler's position as a police officer was a primary reason for the upwards departure.  We thus find that the district court erred by placing significant reliance on an improper factor.  *See Smith*, 440 F.3d at 708.

The additional requirements of the plain error standard are satisfied here.  "To affect the defendant's substantial rights, the defendant must demonstrate that the error affected the outcome of the district court proceedings." *Broussard*, 669 F.3d at 553. "In the context of sentencing, we ask whether the error increased the term of a sentence, such that there is a reasonable probability of a lower sentence on remand." *United States v. Escalante-Reyes,* 689 F.3d 415, 424 (5th Cir. 2012) (quoting *United States v. Garcia-Quintanilla*, 574 F.3d 295, 304 (5th Cir. 2009)).  Given the extensive reliance by the district court on Chandler's position as a police officer and the 127-month upwards departure,

No. 12-30410

"we cannot confidently say that the district court would have imposed the same sentence" without reliance on that factor. *Escalante-Reyes*; 689 F.3d at 424; *Garcia-Quintanilla*, 574 F.3d at 304. Further, based on the "degree of the error and the particular facts of the case," including the length of the upwards departure, which is not obviously justified by other facts in the record, we find it appropriate to exercise our discretion to correct this error on plain error review. *See United States v. John*, 597 F.3d 263, 287-89 (5th Cir. 2010).

Because we find that re-sentencing is required based on the district court's reliance on Chandler's status as police officer, we find it unnecessary to address Chandler's additional arguments. He may address these arguments as necessary to the district court on re-sentencing.

### III. Conclusion

For the foregoing reasons, we VACATE Chandler's sentence and REMAND for re-sentencing.[2]

---

[2] Chandler' motion to seal this case is DENIED. He has not demonstrated that his interests outweigh the public's right to access judicial records. *See S.E.C. v. Van Waeyenberghe,* 990 F.2d 845, 848 (5th Cir. 1993). His motion to use his initials instead of his name in our opinion and on docket sheets is likewise DENIED. *See id.*