# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
January 12, 2022

Lyle W. Cayce
Clerk

No. 20-20454

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

JACK STEPHEN PURSLEY,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:18-CR-00575-1

Before DAVIS, HIGGINSON, and ENGELHARDT, *Circuit Judges*.
KURT D. ENGELHARDT, *Circuit Judge*:

This criminal case concerns an intricate tax-fraud scheme, involving various offshore accounts, a myriad of transactions, and millions in untaxed funds. The focus of this appeal concerns a complex question of fact and law, involving various foreign governments, a host of ambiguous letters, and a thicket of precedent. Jack Pursley raised this complex question as part of his statute of limitations defense several times in motions to dismiss and in proposed jury charges. The law and facts are difficult, but we conclude that Pursley was deprived of his statute of limitations defense. Because Pursley

timely raised this defense, he was entitled to have it considered and to have the jury instructed on it.

## I.

At some point in the past decade, a grand jury began investigating Pursley for his part in a significant tax fraud scheme. The extensive details of the conspiracy are laid out in the indictment and are mostly irrelevant to the precise issue before us. Relevant here is that the scheme involved the use of several offshore accounts, including certain accounts in the Isle of Man. On February 18, 2016, the U.S. Government sent a first "Request for Assistance in the Investigation of Jack Stephen Pursley and Charles Gillis" to the Isle of Man (the "First Request"). According to a representation from the U.S. Government, the First Request sought "business records from Isle of Man Financial Trust Limited, bank records from the Royal Bank of Scotland, Isle of Man branch, and official incorporation records for Southeastern Shipping Company Limited and Pelhambridge Limited." The First Request also sought "the assistance of the Isle of Man to interview six witnesses who are current or former employees of the [Isle of Man Financial Trust Limited]: Andrew Thomas, Nigel Tebay, Andrew Mellor, Kerry Smith, and Christine James and Tracy Duncan."

On March 15, 2016, the U.S. Government sent the Isle of Man a "First Supplemental Request for Assistance in the Investigation of Jack Stephen Pursley and Charles Gillis" (the "Second Request"). According to the U.S. Government, the Second Request sought "business records from Boston Limited relating to the firm's representation of Southeastern Shipping Company Limited, Pelhambridge Limited, and Shaun Mooney and any of his affiliates." Neither Request was made part of the record, which reflects only the U.S. Government's representations on what was in the Requests.

The Isle of Man cooperated with the Government and began sending over the requested documentation as early as May 26, 2016. An August 21, 2017 letter states that the Isle of Man also sent over documentation on July 8, 2016, September 30, 2016, October 31, 2016, May 24, 2017, June 19, 2017, and July 17, 2017. On May 18, 2017, the Isle of Man sent a response which referenced the "Supplementary Letter of Request" (*i.e.*, the Second Request). At the end of the letter, it stated "I believe that this letter of request is now executed in full but if I can be of any further assistance to you in relation to this or any other matter please do not hesitate to contact me." Although the May 18 letter referenced the Second Request, it discussed documents which were requested in the First Request.

The Government followed up with the Isle of Man with a series of emails stretching from August 2017 through October 2018. These emails demonstrate that the U.S. Government continued to seek certain documents that were not provided as of May 18, 2017, and that it was frustrated in its attempts to get these documents and (in particular) witness interviews.

On August 23, 2016, with both Requests pending, the Government moved for a suspension of the statute of limitations under 18 U.S.C. § 3292, which allows for a suspension of the limitations period when the Government seeks evidence from a foreign country. District Court Judge Sim Lake granted the ex parte application the next day. The district court's order stated that "the running of the statute of limitations for the offenses set forth in the Government's Ex Parte Application is hereby SUSPENDED for the period authorized by 18 U.S.C. § 3292(b), (c)." The order did not specify the length of the extension.

The grand jury returned a four-count indictment against Pursley on September 20, 2018. Count One charged Pursley with conspiracy to defraud the United States. Counts Two and Three charged Pursley with tax evasion

for his 2009 and 2010 tax returns, respectively.  Count Four charged Purlsey with tax evasion in violation of 26 U.S.C. § 7201.  The case was assigned to United States District Judge Lynn Hughes.

Pursley moved to dismiss all counts as barred by the statute of limitations.  Relying on the suspension ordered by the district court, the Government opposed the motion.  The district court denied the motion to dismiss without written reasons in a case management order.  Pursley again moved to dismiss the indictment as untimely based on new evidence in May 2019.  The district court again denied the motion.  At a pretrial hearing, the district court seemed to base the dismissal on the order suspending the limitations period without analysis of how long the suspension lasted.  The district court stated, "[A]pparently Judge Lake, in this building, extended limitations, and I can rely on Judge Lake's judgment.  So I'm going to have to deny the limitations defense."

Pursley was tried in September 2019.  Pursley proposed a jury instruction that read: "For you to find the defendant guilty, the government must prove beyond a reasonable doubt that the offense charged was committed within 6 years of the indictment."  Defense counsel raised this jury instruction at the charge conference.  The Government objected to the instruction for a variety of reasons, including because it failed to account for tolling under 18 U.S.C. § 3292.  The Government "acknowledged that it could be appropriate to instruct the jury that it needed to find an overt or affirmative act within the correctly defined limitations period" but "noted that . . . the request was 'awfully late' and that 'we could have dealt with this earlier.'"  The district court denied the limitations instruction requested by Pursley, and the final jury instructions did not include any instruction regarding the statute of limitations.  The jury convicted Pursley on all counts.

Pursley appeals both the denial of the motions to dismiss and the denial of his requested jury instruction.

## II.

We first address the district court's denial of the motions to dismiss. "This court reviews *de novo* the district court's denial of a motion to dismiss an indictment." *United States v. Kay*, 513 F.3d 432, 440 (5th Cir. 2007). Similarly, "[t]he district court's ultimate decision that the statute of limitations was properly tolled is a legal conclusion reviewed *de novo*." *United States v. Wilson*, 322 F.3d 353, 359 (5th Cir. 2003). But factual findings underpinning that ultimate finding are reviewed for clear error. *Id.*

To determine the merit of Pursley's statute of limitations defense, it is necessary to determine exactly when the statute of limitations commenced and ran. Without a suspension, the statute of limitations for each count of the indictment ran for six years. *See* 26 U.S.C. § 6531. As to Count One, "this court has held that the overt acts alleged in the indictment and proved at trial mark the duration of the conspiracy." *United States v. Loe*, 248 F.3d 449, 457 (5th Cir. 2001). For Counts Two through Four, the statute of limitations begins to run at the latest affirmative act to evade tax liability. *See United States v. Irby*, 703 F.3d 280, 284 (5th Cir. 2012). The parties agree that there was at least some suspension of the statute of limitations, but they dispute how long that suspension lasted.

The length of any suspension is determined by 18 U.S.C. § 3292. That statute provides that, upon application by the Government, a district court shall suspend the running of the statute of limitations for an offense if the court finds that an official request has been made to a foreign government for evidence of the offense and it reasonably appears that such evidence was in the foreign country. 18 U.S.C. § 3292(a)(1). The statute continues: "a period of suspension under this section shall begin on the date on which the

official request is made and end on the date on which the foreign court or authority takes *final action* on the request." *Id.* § 3292(b) (emphasis added). Finally, the statute limits the length of time the limitations period may be suspended. It states that "[t]he total of all periods of suspension . . . shall not extend a period within which a criminal case must be initiated for more than six months if all foreign authorities take final action before such period would expire without regard to this section." *Id.* § 3292(c)(2). The parties dispute whether the Isle of Man Government took "final action" on May 18, 2017. If so, the total length of the suspension was six months. *Id.* § 3292(c)(2). If not, the suspension was through the date of the indictment. *Id.* § 3292(c)(1).

We have expounded on the meaning of "final action" in § 3292(b) before in *United States v. Meador*, 138 F.3d 986 (5th Cir. 1998). In that case, the U.S. Government investigated the sale of certain rare goods which were stolen during World War II. *Id.* at 998. The U.S. Government made an official request to Germany on March 2, 1995 for certain evidence, including an interview with Dr. Klaus Maurice. *Id.* at 998–99. By June 7, 1995, all of the witness interviews were completed. *Id.* at 989. On October 27, 1995, the German Ministry of Justice sent a letter stating: "I have the honor of transmitting to you the following items in satisfaction of the above request which have turned up in Bavaria. . . . According to my documentation, the request has now been satisfied. I therefore consider my function to be concluded." *Id.* Despite the German Government's representation, it followed up by sending additional relevant documents to the U.S. Government, and the U.S. Government responded that additional documents were required. *Id.* The prosecutors did not wait for a response before indicting the defendants. *Id.* at 990. The German Government eventually followed up with the requested documents almost four months after the indictment was returned. *Id.* Shortly after their initial request to the German Government, prosecutors sought, and were granted, a

suspension of the statute of limitations under § 3292. *Id*. at 989. The question before the court was at what point the German Government took "final action" within the meaning of § 3292. *Id*. at 991.

We held that the German Ministry's October 27, 1995 letter constituted a "final action" notwithstanding the additional documents it sent or the prosecutors' follow-up requests. *Meador*, 138 F.3d at 991–92. In coming to this conclusion, we held that a determination of when a "final action" has been taken by a foreign government "must turn on whether a dispositive response to an official request for evidence from our government has been obtained." *Id*. at 992. We explained that "when the foreign government believes it has completed its engagement and communicates that belief to our government, that foreign government has taken a 'final action' for the purposes of § 3292(b)." *Id*. We further emphasized that "[t]here must be a certain and definitive end to the suspension period, a point at which 'final action' can be plainly located. If the period is suspended retroactively whenever another relevant document comes in, there will be no certain end." *Id*. at 994. Finding that the October 27, 1995 letter from the German Ministry constituted a "dispositive response" that the "government believe[d] it [had] completed its engagement," we ruled that letter constituted a final action. *Id*.

The *Meador* court relied in part on *United States v. Bischel*, 61 F.3d 1429 (9th Cir. 1995). In that case, the Ninth Circuit was faced with the meaning of "final action" within the statute. The court adopted the test ostensibly approved by the Fifth Circuit, *i.e.*, that a "final action" must include "a dispositive response to each item set out in the official request, including a request for certification." *Id*. at 1433. It further held that "pegging 'final action' to disposition, up or down, of each of the items in the official request provides a more certain benchmark by which to measure whether the action that has been taken is 'final' or not." *Id*. at 1434. But

there exists tension between the two opinions. As the Eleventh Circuit has noted, "[a]lthough in form *Meador* is consistent with *Bischel*, we find the Fifth Circuit's opinion in *Meador* substantively more narrow as it requires only that the foreign government think that is [sic] has provided a complete response, whereas, in *Bischel*, the Ninth Circuit required a complete response to the government's original request." *United States v. Torres*, 318 F.3d 1058, 1063 n.7 (11th Cir. 2003).

On appeal, Pursley asks us to hold that the Isle of Man's May 18, 2017 letter demonstrated that "the foreign government believe[ed] it ha[d] completed its engagement and communicate[d] that belief to our government" and was therefore a final action within the meaning of § 3292(b). *Meador*, 138 F.3d at 992. The Government asks us to find that the May 18 letter did not include "a dispositive response to each item set out in the official request, including a request for certification" and therefore cannot be a "final action" under *Bischel* or *Meador*. *Bischel*, 61 F.3d at 1433.

Thus, the parties seek this court's determination of the import of the Isle of Man's May 18, 2017 letter, which is an inextricably fact-bound question. For example, the fact-finder must weigh whether the Isle of Man's May 18, 2017 letter was referring to both of the U.S. Government's Requests and whether, in context, that letter was an indication that the Isle of Man believed it had completed its engagement. Making such a factual finding is in the clear province of the district court and is beyond our role as an appellate court. *See Norelus v. Denny's Inc.*, 628 F.3d 1270, 1293 (11th Cir. 2010) ("[A]s everyone knows, appellate courts may not make fact findings."). Indeed, at oral argument, both parties conceded that the district court should determine the length of any suspension under § 3292 in the first instance.

The district court denied Pursley's motions to dismiss summarily, referring to Judge Lake's order pursuant to § 3292. But no district judge has

yet calculated the length of the suspension under § 3292. On remand, the district court should consider the record[1] and the applicable law to determine whether the Isle of Man's May 18, 2017 letter was a "final action" on these facts. It should then calculate the relevant suspension of the statute of limitations. If the last overt act or affirmative act of any count falls outside of the statute of limitations, as suspended, that count is subject to dismissal.

## III.

We next turn to Pursley's related claim that the district court erred in failing to instruct the jury on his statute of limitations defense. The parties dispute our standard of review here. Pursley argues that our review is de novo; the Government presses that it should be for clear error. Because the district court erred under either standard of review, we pretermit this question. *See United States v. Holguin-Hernandez*, 955 F.3d 519, 520 n.1 (5th Cir. 2020).

A proposed instruction must (1) be substantially correct as a statement of the law, (2) not be substantially covered in the charge as a whole, and (3) concern an important issue in the trial, such that failure to give it seriously impairs the presentation of an effective defense. *See HTC Corp. v. Telefonaktiebolaget LM Ericsson*, 12 F.4th 476, 484 (5th Cir. 2021); *see also United States v. Davis*, 609 F.3d 663, 689 (5th Cir. 2010). Here, the parties contest only the first element—whether the proposed instruction was "substantially correct as a statement of the law."

The proposed jury instruction in question stated: "For you to find the

---

[1] We note that the record in this matter is sparse, in large part because the Government failed to produce evidence that is within its possession. For example, the record does not include the First or Second Requests themselves or the vast majority of the responses from the Isle of Man. *See United States v. Wilson*, 322 F.3d 353, 359–60 (5th Cir. 2003).

defendant guilty, the government must prove beyond a reasonable doubt that the offense charged was committed within 6 years of the indictment." The Government argues that the district court was correct to reject the instruction because, as initially proposed by Pursley, the instruction failed to account for any suspension of the statute of limitations and was therefore not "substantially correct." But at the charge conference, Pursley's counsel offered to modify the instruction with a suspension and reasonably pointed out that there had been no exact judicial determination of how long any suspension was. Without such a determination, it was difficult to draft a jury instruction taking into account that suspension.[2] The Government conceded at the charge conference, in its brief, and at oral argument, that a proper instruction could be formulated. But the Government's position at the charge conference was not that the instruction as proposed was improper, but rather that because prosecutors felt the issue was "highly complex" and "was opening a can of worms awfully, awfully late"[3] that it was "an unnecessary request" that was "preserved for appeal." These arguments are unpersuasive. Pursley's request for the jury instruction was timely, and the complexity of the issues involved does not justify denying a defendant a requested instruction.

We have held that a proposed jury instruction is "substantially incorrect" when, for example, the instruction relied on inapplicable law or had no foundation in the text of the relevant statute. *See HTC Corp.*, 12 F.4th

---

[2] We acknowledge that at one point in the charge conference the district court stated that the suspension was "two years and nine months." This calculation was based solely on the Government's rough estimate at the charge conference, and no one argues that it was correct on appeal.

[3] The Government's contention that this issue was brought "awfully late" is belied by the record, which includes two motions to dismiss and two versions of Pursley's proposed jury instructions regarding the statute of limitations.

at 484 (holding that a jury instruction based in United States patent law was not substantially correct when French law, not United States law, applied); *United States v. Perez-Valdez*, 182 F.3d 331, 332–33 (5th Cir. 1999) (holding a district court did not abuse its discretion when it rejected a jury instruction which "has no foundation in the text of the statute and is contrary to its plain language"). But there was no such fundamental error here. On these facts, we reject the Government's contention that the district court properly denied the proposed jury instruction because it was "substantially incorrect." It is difficult to fault Pursley's counsel for not incorporating any suspension period when the district court provided no guidance on how long the statute of limitations was suspended. As described above, this is necessarily a factual issue the district court must resolve. Moreover, even if the jury instruction had incorporated the Government's preferred length of tolling, there were acts incorporated as to each count outside of this period.

Once a statute of limitations defense was raised, the Government was required to prove that at least one overt act or affirmative act took place within the limitations period as to each count. *See United States v. Mann*, 161 F.3d 840, 865–66 (5th Cir. 1998); *see also United States v. Williams*, 928 F.2d 145, 149 (5th Cir. 1991). The jury never made any such finding in this case, on the jury form or elsewhere, as it was never instructed that it was required to do so. On remand, the district court is hereby directed to calculate the length of the suspension, as detailed above. Pursley is entitled to a new trial, in which a jury must find that an overt or affirmative act was committed in the proper limitations period as to each count.

## IV.

Pursley was entitled to have the district court fully consider his statute of limitations defense, to have the district court calculate the exact time the statute of limitations ran under existing precedent, to dismissal of any charge

that was untimely under that calculation, and to a jury instruction on the statute of limitations defense.   Accordingly, we VACATE Pursley's conviction, and REMAND for proceedings consistent with this opinion.